Robert F. Hatch, Petitioner-Appellant, v. Sidney T. Holzman, et al., Constituting the Board of Election Commissioners of the City of Chicago, and Ex Officio Constituting the Electoral Board for the Purpose of Hearing and Passing Upon Nominating Petitions for the Office of Ward Committeeman, and Edward J. Barrett, County Clerk of Cook County, Illinois, Defendants-Appellees.

**Gen. No. 49,520.**

First District, Third Division.

December 3, 1964.

Rehearing denied February 4, 1965.

S. Ashley Guthrie and John P. Forester, of Chicago, for Robert F. Hatch, appellant.

Stanley T. Kusper, Jr., and William R. Ming, Jr., of Chicago, for Board of Election Commissioners, appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from an order of the circuit court of Cook County quashing a writ of certiorari sued out to obtain judicial review of a decision of the Board of Election Commissioners of the city of Chicago, sitting ex officio as an Electoral Board. The petitioner filed a nominating petition for the office of Republican Ward Committeeman of the 19th Ward of the city of Chicago with the County Clerk of Cook County on January 20, 1964, to be voted for in the primary of April 14, 1964. Objections to the nominating petition were thereafter filed on February 7, 1964, and after proper notice a hearing was held on the petition, and the objections, before the Electoral Board, and the objections to said nominating petition were sustained.

The nominating petition for the petitioner-appellant contained 3,070 signatures. Under the law a nominating petition for Republican Ward Committeeman in the 19th Ward was required to contain not less than 2074 and not more than 3,317 signatures of qualified primary electors of the Republican Party of said ward for the election held on April 14, 1964.

Section 7-10 of The Election Code (Ill Rev Stats 1963, c 46, § 7-10) sets forth the form, content and requirements of the petition of a candidate for Ward Committeeman who desires to have his name printed upon the primary ballot. This section also provides that such petitions must be signed by qualified primary electors of the candidate's party. Section 7-13 of the Election Code sets forth the time within which

to file objections to the petitions for candidates for Ward Committeeman, and the time within which the Board is required to certify its decision, stating whether or not the name of the candidate shall be printed on the ballot.

The objections raised by the objector are the following: That there were 1363 names on the petition of persons who were not in fact members of and affiliated with the Republican Party and were not qualified primary electors of the Republican Party; that there were 49 nominators who were not registered; that there was one circulator who signed the sheet he circulated as a nominator; that there were 12 persons that had signed the nominating petition for the candidate more than once; that there were abbreviations of signatures totaling 198 names; that there were 15 illegible signatures; that one nominator did not reside in the 19th Ward; that the sheets bearing the names of 172 nominators were circulated by Democrats; that the circulator did not sign a registered name on 13 petitions containing a total of 257 signatures; that one person signed his own name and the name of some other person in 163 instances, and that 211 persons signed other nominating petitions for the same office.

At the hearing before the Electoral Board the objector asked leave to file an objector's supplemental petition with clarification on points already urged in the objections, and setting forth additional names objected to. The candidate objected to the filing of the supplemental petition. The motion to strike the objector's supplemental petition was taken under advisement and the supplemental petition was received in evidence subject to the objection of the candidate.

It is conceded by the candidate that if there were 1363 names on his petition of persons who are not

qualified primary electors of the Republican Party, his petition did not contain sufficient names.

After a hearing the Electoral Board announced its decision on February 14, 1964, in which it ordered, adjudged and decreed that the objections of Robert J. Lyman to the nominating petition of Robert F. Hatch be sustained and that said petition is declared insufficient in law, and that the name of Robert F. Hatch shall not be printed on the ballot at the primary election to be held on April 14, 1964.

Of course, if all of the foregoing objections were valid there would be no question as to the invalidity of the nominating petition of the candidate. Furthermore, if only 544 nominators were found not to be qualified Republican Primary Electors, the nominating petition could conceivably be held insufficient because of a consideration of all or a part of the other objections filed thereto. The petition required a minimum of 2074 signatures. There were 3070 signatures on the petition, leaving an excess of 996. The objections far exceeded this number.

During the hearing Commissioner Sheehan, one of the members of the Electoral Board said: "Just a minute, gentlemen. For your own information, all of the names that you object to will be checked with the register in the Election Commission office. When you get ready for that, see one of our men here and arrange that each one of you will have a watcher present." Later during the hearing Commissioner Sheehan stated: "That will all be checked in the binders."

Petitioner contends that the Board exceeded its jurisdiction; that its decision was arbitrary and capricious; that it misinterpreted the statutory requirement that a petition for Ward Committeeman be signed by "qualified primary electors" of the same political

party as that of the candidate, and that it made no findings of fact.

Petitioner alleged that his nominating petition and the signatures thereon, together with the objections, were checked with the register of voters of the 19th Ward by the Board in arriving at its decision. While the petitioner claims that only 544 of the 1363 names on his petition were checked out as persons not "qualified primary electors" as interpreted by the Board, there is nothing in the record before us to indicate that to be a fact. The petitioner also claims that none of the 1363 signatures on the petition designated as persons not qualified Republican Primary Electors were legally disqualified from signing his petition. Since there were no findings of fact in the order of the Board we are unable to determine what interpretation was given these designations appearing in the objections.

There were 159 nominating petitions filed for Ward Committeeman in the city of Chicago, including petitioner's. These were filed with the County Clerk of Cook County on or before January 27, 1964. Objections were filed to the nominating petitions of 55 candidates with the County Clerk on or before February 7, 1964. On February 8, 1964, the County Clerk sent to each of those candidates, including petitioner herein, by registered mail, return receipt requested, notice of the filing of objections and a copy of them. The County Clerk on the same day sent the nominating papers, to which objections had been filed, and the objections, to the Electoral Board of the City of Chicago. February 8, 1964 was a Saturday. The Board on that date placed with the Sheriff of Cook County for service on the candidates and the objectors notice that the statutory hearings would be held beginning February 11, 1964, and also mailed notice to the candidates and the objectors to the same effect. On Feb-

ruary 13, 1964, the objections to the nominating petition of the petitioner were heard before the Board. Attorneys for both sides agreed that a check of the names on the petition would be made against the registers of voters.

We conclude that the Electoral Board, having complied with its statutory duties, had jurisdiction of the subject matter and the parties and did not exceed its jurisdiction.

 Where the Board's interpretation of the law, as to certain objections, has not been assailed as so unreasonable as to make the Board's decision fraudulent, this court has no power to review it, since section 10–10 of The Election Code makes the Board's decision final. This is true even though the Board's interpretation of the law may be incorrect. Telcser v. Holzman, 31 Ill2d 332, 201 NE2d 370.

 It was necessary for the Board to make its decision in each of the cases heard by it before 5:00 p. m., on February 14, 1964. As was pointed out above, 55 nominating petitions were filed to which objections were also filed. The hearings commenced on February 11, 1964, and were completed on February 13, 1964. It would have been an almost impossible task for the Board to have given special attention to each of the objections, and it is conceivable that errors, and even unfair rulings, could have been made by the Board in its haste. Under these conditions it cannot be said that its decision was capricious.

Section 10–10 of the Election Code (Ill Rev Stats 1963, c 46, § 10–10) provides in part:

> "The electoral board . . . shall decide whether or not the certificate of nomination or nomination papers on file are valid or whether the objections thereto should be sustained and *the decision of*

173

*a majority of the electoral board shall be final."*
(Emphasis added.)

In People ex rel. Schlaman v. Electoral Board of Cook County, 4 Ill2d 504, 509, 122 NE2d 532, 535, the court said:

> "A clearly fraudulent decision by the electoral board based upon an abuse of discretion could conceivably result in a seizure of the control of political machinery and an effective disenfranchisement of voters or candidates. In such instance it may be that relief could be had in the courts. This is not such a case, however, and considering the plaintiff's allegations we are of the opinion, in view of section 10–10 of the Election Code, that the decision of the electoral board is final. Therefore, the circuit court of Cook County did not have jurisdiction to grant the requested relief, and it committéd error in purporting to do so."

 As has been pointed out in Coles v. Holzman, 55 Ill App2d 93, 204 NE2d 162, decisions may be unjust without being fraudulent, and also that decisions made in haste under the pressure of a congested calendar may be arbitrary. However, such decisions unless "clearly fraudulent" cannot be reviewed. We are of the opinion that the case before us is not one that falls within the category of those designated as "clearly fraudulent."

In Telcser v. Holzman, 31 Ill2d 332, 201 NE2d 370, which involved a decision of the same Electoral Board handed down at the same time the decision was rendered in the present case, the court said on page 339:

> "No constitutional question having been presented by these appeals, we would normally transfer the cases to the Appellate Court. However, in

174

People ex rel. Schlaman v. Electoral Board, 4 Ill2d 504, we held that in the absence of such an unreasonable determination by the electoral board as to amount to fraud, its determination under section 10–10 was final and the courts have no jurisdiction to review it. Since the Board's interpretation of 'qualified primary electors,' although it may not be correct, has not been assailed as so unreasonable as to make the Board's decision fraudulent, there is nothing for the Appellate Court to consider."

As to the final contention of the plaintiff to the effect that the Board made no findings of fact in its order, the court in Telcser v. Holzman, 31 Ill2d 332, 201 NE2d 370, said that the principal reason given for requiring written findings by an administrative agency, in the absence of statutory command, is that they are necessary for orderly and efficient judicial review. However, the court pointed out that where the administrative decision is not subject to judicial review there appears to be no substantial reason for requiring written findings in the absence of legislative requirement. The court also said that since the Board's determination is not subject to judicial review, the failure to make written findings has not deprived petitioner of any right to judicial review.

The order of the circuit court is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.